IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TROY COULSTON, | ) | |
| | ) | Civil Action No. 14 – 112J |
| Plaintiff, | ) | |
| | ) | District Judge Kim R. Gibson |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| STEVEN GLUNT, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

For the following reasons, it is respectfully recommended that Defendants' Partial Motion to Dismiss (ECF No. 21) be denied in part and granted in part. It is recommended that the request for dismissal of Plaintiff's retaliation and assault and battery claims be denied. The Motion should be granted in all other respects.

**II.   REPORT**

Plaintiff Troy Coulston is an inmate in the custody of the Pennsylvania Department of Corrections and is currently confined at SCI-Houtzdale. In his Complaint, filed pursuant to 42 U.S.C. § 1983, he alleges that CO Wilt used excessive force when he slammed a 100 pound steel door on Plaintiff's leg and back. Along with CO Wilt, Plaintiff has sued five other prison officials: Superintendent Glunt, Sgt. Young, Lt. Shea, Superintendent's Assistant Chencharick, and Chief Grievance Officer Varner. He alleges that these individuals failed to investigate the aforementioned incident and did not notify the police when he requested that they do so.

1

Defendants' have filed a Partial Motion to Dismiss, and although Plaintiff was granted an extension of time to file a response in opposition to the Motion, no response was filed. Therefore, the Motion is ripe for review.

### A. Plaintiff's Allegations

Plaintiff alleges that on May 31, 2012, CO Wilt violently slammed a 100 pound steel door on his leg and back with the intent to strike him with the initial force of the slammed door. (ECF No. 5 at ¶¶ 8, 21.) Plaintiff was then trapped between the door and its frame at which time CO Wilt violently applied pressure on the door to close it. Id. at ¶¶ 9, 22. CO Wilt then told Plaintiff that he "better stop the pending law suit on [his] friends" and not say anything about the door incident or he would kill him. Id. at ¶¶ 9, 23. After Plaintiff agreed, CO Wilt let pressure off the door allowing Plaintiff to squeeze out. Id. at ¶¶ 10, 24.

Shortly thereafter, another inmate notified Sgt. Young that CO Wilt slammed the door on Plaintiff's leg and back, and Sgt. Young replied "thanks for notifying me, please proceed to the yard." Id. at ¶¶ 11-12. Plaintiff states that Young failed to investigate or notify prison officials. Id. at ¶¶ 11-12, 37-39.

Following the incident, Plaintiff submitted a sick call request and in response he was treated by two physicians who diagnosed him with a back spasm and a right knee injury. Id. at ¶ 26. He was prescribed Flexaril and Ibuprofen. Id. at ¶ 27. Plaintiff states that as a result of the incident he lost mobility in his knee and back until January 1, 2013. Id. at ¶ 29. Plaintiff was also provided with psychological and psychiatric treatment for his mental and emotional injuries stemming from the incident. Id. at ¶¶ 32, 33. For this he was prescribed Trilafon and Vistaril. Id. at ¶ 34.

Plaintiff notified Ms. Chencharick in writing that CO Wilt assaulted him by slamming the door on his leg and back, and he requested that she notify police. Id. at ¶¶ 13, 43-44. Ms. Chencharick gave him a receipt that his complaint was received but she failed to notify police. Id. at ¶ 14. That same day, June 4, 2012, Plaintiff notified Lt. Shea of the incident in writing and requested that he notify police; however, Lt. Shea's response was "no" but he did reprimand CO Wilt. Id. at ¶¶ 15, 46-47.

Months later, on August 9, 2012, Plaintiff notified Superintendent Glunt of the incident in writing and requested that he notify police. Id. at ¶¶ 16, 49-50. Glunt responded "no". Id. On August 5, 20121, Plaintiff notified Ms. Varner and asked her to notify police. Id. at ¶¶ 17, 52-53. In response, she also said "no". Id.

Plaintiff alleges that he attempted to mail a criminal complaint to the state police but that his mail was interfered with by prison mail staff member John Doe. Id. at ¶¶ 18, 55.

**B. Standard of Review**

Recently, the United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); see also Covington v. Int'l

Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

### C. Discussion

#### 1. Due Process

First, Plaintiff asserts a due process claim against all identified Defendants (this includes all but John Doe). As it relates to Defendants Young, Shea, Glunt, Chencharick and Varner, it appears that his claim is based on the allegation that they failed to investigate the incident when they were notified of it, either verbally or in writing, and also that they failed to notify the police when requested to do so by Plaintiff. However, contrary to Plaintiff's allegations, the failure to investigate and notify police of an incident does not violate the Due Process Clause of the Fourteenth Amendment; nor does it implicate a fundamental right. See Hewitt v. Helms, 459 U.S. 460 (1983) (To establish a claim under the Due Process Clause, a plaintiff must first set out facts that demonstrate he had a protected liberty interest impaired by the defendants' actions); Meachum v. Fano, 424 U.S. 215, 223-24 (1976) (The safeguards of the Due Process Clause are triggered only when a Fourteenth Amendment protected liberty interest is at stake). See also Sandin v. Conner, 515 U.S. 472, 484 (1995) (Only instances of "atypical and significant hardship…in relation to the ordinary incidents of prison life" can trigger the protection of the Due Process Clause.)

It is apparent that this claim stems from these Defendants' respective roles in the grievance process when they were notified of the incident after-the-fact. However, the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement in a

civil rights action. See Rode v. Dellarciprete, 845 F.2d 1207, 1208 (3d Cir. 1988); Ramos v. Pennsylvania Dept. of Corrections, 2006 WL 2129148, *2 (M.D. Pa. July 27, 2006); Jefferson v. Wolfe, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006). Likewise, participation in a prison's other administrative appeals processes, such as misconduct and prison review committee appeals, is an insufficient basis for personal involvement. See Fortune v. Hamberger, 2007 WL 2782320, at *3 (W.D. Pa. Sept. 21, 2007) (citing Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983)).

Here, Defendants Shea, Glunt, Chencharick and Varner were notified of the incident with CO Wilt days and months after it occurred. There is case law to support a finding of personal involvement when a defendant denies a grievance without adequate investigation. There may also be a cause of action where a plaintiff complains of an incident after-the-fact but only if it is an ongoing constitutional violation. See Harnett v. Barr, 538 F.Supp.2d 511, 524-25 (N.D.N.Y. 2008) ("Where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") In this case, the event Plaintiff complained of occurred days or months prior and was a one-time event. In the grievance and appeal responses, several Defendants explained that while the investigation did not reveal criminal conduct, Plaintiff could contact the police if he chose to do so. He was even given a mailing address. For these reasons, Plaintiff has not stated a due process claim against Defendants Young, Shea, Glunt, Chencharick and Varner, and dismissal of this claim is therefore recommended.

Next, there are no facts in the Complaint to support a plausible claim for relief under the Due Process Clause against CO Wilt. The facts and circumstances underlying the Complaint

simply do not support any claim for relief pursuant to the Due Process Clause. Therefore, the due process claim against CO Wilt should also be dismissed.

### 2. Equal Protection/Discrimination

Plaintiff claims that all identified Defendants denied him equal protection. With regards to Defendants Young, Shea, Glunt, Chencharick and Varner, Plaintiff alleges that they did not investigate and/or notify the police because he is an inmate and they would have done so had he been a staff member. This claim invokes rights as protected by the Fourteenth Amendment. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)). See also United States v. Armstrong, 517 U.S. 456 (1996) (Equal Protection Clause prohibits decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification). To state a claim under this theory, "a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008).

In analyzing an equal protection claim, a court must consider what interest or type of classification is involved. Plaintiff's present claim does not involve a classification based on race, religion or national origin, and prisoners are not a protected class of individuals. Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (neither prisoners nor indigents are suspect classes). Moreover, Plaintiff's claim is that he was treated differently because he is an inmate

and not a staff member. This is insufficient to state an equal protection claim as staff members are not "similarly situated" to inmates. Therefore, Plaintiff's claim does not trigger protections under the Equal Protection Clause and should be dismissed.

Plaintiff also alleges an equal protection claim against CO Wilt but once again there are no allegations in the Complaint to support such a claim. Therefore, it should be dismissed.

### 3. Obstruction of Justice, Official Oppression, Terroristic Threats, Intimidation of a Witness

Plaintiff asserts obstruction of justice claims against all identified Defendants and also claims of official oppression, terroristic threats, and intimidation of a witness against CO Wilt. These, however, are criminal charges, and the decision of whether to prosecute, and what criminal charges to bring, generally rests with the prosecutor. See United States v. Batchelder, 442 U.S. 114, 124 (1979). Plaintiff, like any private citizen, has no constitutional right to have someone criminally charged. See Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); Fulson v. City of Columbus, 801 F. Supp. 1, 6 (S.D. Ohio 1992) ("Thus, courts have generally declined to recognize standing on the part of victims of crimes to bring a § 1983 action based upon lack of prosecution of others."). Therefore, these claims fail as a matter of law.

### 4. Deliberate Indifference to Medical Needs

Plaintiff asserts a deliberate indifference to medical needs claim against all identified Defendants. In order to state a claim for deliberate indifference under the Eighth Amendment in the context of medical treatment, a plaintiff must allege two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious

7

medical need. Gamble v. Estelle, 439 U.S. 897 (1978). Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Based on his allegations, Plaintiff did receive medical care following the incident. He admits that he submitted a formal sick call request to medical the same day the incident occurred, and he discusses at length the treatment he received from medical professionals. While he mentions in passing that Sgt. Young failed to notify medical about his injuries, there are no allegations that Sgt. Young prevented Plaintiff from getting medical care. In fact, Plaintiff himself did not even inform Sgt. Young of his injuries. Plaintiff's allegations are simply insufficient to show that Sgt. Young, or any other Defendant, acted with the state of mind required to state a deliberate indifference claim. Accordingly, this claim should be dismissed.

### 5. Access to Courts

Plaintiff asserts a denial of access to courts claim against Chencharick, Shea, Glunt and Varner. However, there are no facts in the Complaint to support a plausible access to courts claim against these Defendants. Under the First Amendment, prisoners have a right of access to the courts. See Lewis v. Casey, 518 U.S. 343 (1996). Importantly, however, where an inmate does not allege actual injury to his ability to litigate a claim, his constitutional right to access the courts has not been violated. See id. at 351-53. An actual injury is shown only where a nonfrivolous claim, or one of arguable merit, is lost. See Christopher v. Harbury, 536 U.S. 403, 415 (2003); see also Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). Here, the facts and circumstances underlying the Complaint simply do not support any claim for relief under the First Amendment for an access to courts violation. Plaintiff does not state how these Defendants

denied him access to the courts or what injury he suffered as a result thereof. His access to courts claim against these individuals is nothing more than a conclusive statement with no factual support. This does not satisfy the Iqbal standard. Therefore, this claim should be dismissed.

### 6. Assault and Battery

Plaintiff asserts a pendent state law intentional tort claim against CO Wilt for assault and battery. In 1978, the Pennsylvania General Assembly passed the Act of September 28, 1978, P.L. 788, No. 152, 1 Pa.C.S. § 2310, which is a comprehensive tort claims act that provides sovereign immunity for the Commonwealth, its agencies, and employees acting within the scope of their employment. There are nine exceptions to this sovereign immunity. They are: (1) vehicle liability; (2) medical/professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S. § 8522. Additionally, sovereign immunity applies to intentional as well as negligent torts. See Story v. Mechling, 412 F. Supp. 2d 509, 519 (W.D. Pa. 2006).

The Pennsylvania Department of Corrections is an agency of the Commonwealth of Pennsylvania. See Waters v. Tennis, No. 04-2497, 2006 WL 2136248, at *2 (M.D. Pa. Jul. 26, 2006). As such, it is governed by Section 9522, which does not provide an exception for willful misconduct. See Kranson v. Valley Crest Nursing Home, 755 F.2d 46, 52 (3d Cir. 1985); Holt v. Northwest Pennsylvania Training P'ship Consortium, Inc., 694 A.2d 1134, 1140 (Pa. Commw. 1997) ("Unlike for local agency employees, willful misconduct does not vitiate a Commonwealth employee's immunity.")

9

Plaintiff's state law claim against CO Wilt does not fall within one of the exceptions to sovereign immunity listed in Section 8522. The claim is therefore barred unless CO Wilt was acting outside the scope of his employment during the alleged assault and battery.

Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpected by the employer. Wesley v. Hollis, No. 03-3130, 2007 U.S. Dist. LEXIS 41562, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007). Where the alleged intentional tort was provoked, unnecessary or unjustified by security concerns or penological goals, courts have ruled that such conduct does not, as a matter of law, fall within the scope of employment. For example, in Robus v. Pennsylvania Dep't of Corrections, No. 04-2175, 2006 WL 2060615, at *13 (E.D. Pa. Jul. 20, 2006), the defendant corrections officer allegedly beat the plaintiff and placed him, without justification, in the restricted housing unit. Concluding that if the defendant acted as alleged, then his conduct fell outside the scope of his employment, the court declined to dismiss the plaintiff's claims against that defendant on sovereign immunity grounds.

Similarly, in Velykis v. Shannon, No. 06-0124, 2006 WL 3098025 (M.D. Pa. Oct. 30, 2006), where a defendant corrections officer allegedly slammed a van door on the plaintiff's head, the court held that the defendant was not entitled to dismissal at the pleading stage on the basis of sovereign immunity. In so concluding, the court noted that "[t]he intentional use of force alleged here is not of a kind and nature [the defendant] was employed to perform, it does not appear to have been intended to serve any purpose of the Department of Corrections, and while the Department would expect that force might be used at some point against an inmate, it

would not expect the deliberate and unjustified use of force, apparently totally divorced from any need of the officer to exert control over the prisoner." Id. at *3-4.

If Plaintiff's allegations are true, and CO Wilt was on duty and working his regular hours when the incident in question occurred, then his use of force was unprovoked and unwarranted. Such use of force is not the type of force expected or permitted by the Department of Corrections. Therefore, CO Wilt is not entitled to sovereign immunity at this stage of the proceedings and Plaintiff's assault and battery claim should not be dismissed.

### 7. Excessive Force

It is not disputed that Plaintiff has sufficiently pled an excessive force claim against CO Wilt. Defendants do not move to dismiss this claim.

### 8. Retaliation

Although not addressed by Defendants, Plaintiff's allegations can be read to assert a retaliation claim against CO Wilt. Specifically, Plaintiff claims that CO Wilt threatened to kill him after slamming him with the door if Plaintiff did not stop the pending lawsuit on his friends or if Plaintiff told internal security about the incident. In order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[1] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants'

---

[1] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

conduct.[2] Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Allah, 229 F.3d at 224; Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). Here, it can be inferred from Plaintiff's allegations that CO Wilt's actions were the result of Plaintiff filing a lawsuit against his friends. Thus, Plaintiff has alleged the first element of a retaliation claim.

With respect to the second element, the adverse action here is the alleged use of excessive force by CO Wilt. At this early stage of litigation, and in the absence of discovery related to Plaintiff's excessive force claim, the assertion of mistreatment related to Plaintiff's filing of a lawsuit against CO Wilt's friends is sufficient to support a retaliation claim.

With respect to the third factor, the Court does not have sufficient facts to determine whether Plaintiff has established motivation. At this stage of the litigation, given the temporal connection between the alleged claim of retaliation and the filing of the lawsuit, there are enough facts set forth by Plaintiff to raise a reasonable expectation that further discovery in this case may reveal evidence of retaliatory intent. Although Plaintiff faces a substantial burden in proving his

---

[2] The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)).

claim, his Complaint does allege sufficient facts to support a cause of action based on retaliation. As such, this claim should not be dismissed.

### 9. Mail Interference

Plaintiff alleges that Defendant John Doe, a worker in the prison's mail room, interfered with his mailing of a criminal complaint to the state police. Plaintiff alleges only that he placed envelopes in the mail box on three separate occasions but instead of it being sent to the police station "it was interfered with". He does not state in what way it was interfered with or if it was ever received by the state police.

Nevertheless, liberally construing Plaintiff's allegations to raise an access to courts claim, he must show that the actions of John Doe hindered his efforts to pursue a non-frivolous claim. See Christopher, 536 U.S. at 415; Monroe, 536 F.3d at 205. This "injury requirement is not satisfied by just any type of frustrated legal claim." Lewis, 518 U.S. at 354. The right to access to the court is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." Id. at 355. "Impairment of any *other* litigating capacity is simply one of the incidental consequences of conviction and incarceration." Lewis, 518 U.S. at 349.

To the extent he raises an access to courts claim against John Doe, Plaintiff's allegations are insufficient to survive a motion to dismiss. The injury suffered here, the loss of the ability to file a private criminal complaint, is unfortunately an "incidental consequence of conviction and incarceration." Lewis, 518 U.S. at 349. Therefore, such claim should be dismissed.

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Partial Motion to Dismiss (ECF No. 21) be denied in part and granted in part. It is recommended that

the Motion be denied as to Plaintiff's retaliation and assault and battery claims. The Motion should be granted in all other respects.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: May 22, 2015.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Troy Coulston
    BK-3534
    SCI Houtzdale
    P.O. Box 1000
    Houtzdale, PA 16698